**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CRIMINAL ACTION** |
| v. | ) | |
| | ) | **No. 04-20044-01-KHV** |
| **ANDRE IVORY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

After defendant pled guilty to multiple counts of distributing and possessing with intent to distribute cocaine base (Counts 2 through 7), a jury found him guilty of conspiracy to kill a federal witness (Count 8), attempted murder of a witness (Count 10) and discharge of a firearm during the commission of a crime of violence (Count 11).  On May 2, 2006, the Court sentenced defendant to a controlling term of life in prison.  On July 8, 2020, the Court sustained defendant's pro se motion to reduce his sentence under Section 404(b) of the First Step Act of 2018, Pub. Law 115-391, 132 Stat. 5194 (enacted Dec. 21, 2018), which eliminated the statutory minimum and lowered the statutory maximum from life to 30 years on Counts 4 through 7 which charged distribution of "more than five grams of cocaine base."  Memorandum And Order (Doc. #592) at 14.  The Court also appointed the Office of the Federal Public Defender to represent defendant and ordered the parties to brief the issue of an appropriate revised sentence.  See id.  This matter is before the Court on the Updated Government Sentencing Memo (Doc. #611) filed September 13, 2021 and defendant's Motion For Compassionate Release (Doc. #617) filed December 1, 2021.  For reasons stated below, the Court sustains in part defendant's motion for compassionate release and reduces defendant's controlling sentence from life in prison to 360 months in prison and a special term of

supervised release of 60 months of home confinement.

**Factual Background**

On March 25, 2004, law enforcement officers arrested defendant on various drug charges after an informant, Tania Atkins, purchased crack cocaine from him on several occasions. Shortly thereafter and while in custody, defendant instructed his girlfriend, Pamela Tyler, to meet with her brother, Mark McGee, to organize and execute a plan to kill Atkins. For approximately one month, defendant had daily conversations with Tyler about the plan to kill Atkins. Eventually, McGee recruited Kyle Crayton to kill Atkins. On April 29, 2004, Crayton rammed his vehicle into the van that Atkins was driving and fired from a 9mm Ruger at Atkins until the gun jammed. Atkins survived but suffered severe injuries.

On May 26, 2005, a grand jury returned an 11-count superseding indictment which, in part, charged defendant with conspiracy to distribute or possess with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 846 (Count 1), distributing and possessing with intent to distribute cocaine base (Counts 2 through 7), conspiracy to kill a federal witness in violation of 18 U.S.C. §§ 371 and 1512(k) (Count 8), attempted murder of a witness in violation of 18 U.S.C. § 1512(a)(1)(A) (Count 10) and discharge of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Count 11). See Third Superseding Indictment (Doc. #213).

On October 22, 2005, pursuant to 21 U.S.C. § 851, the government filed an Enhancement Information (Doc. #310) to establish defendant's prior drug felony conviction in Wyandotte County (Kansas) District Court, Juvenile Division, Case No. 90-JV-1644.[1] The filing of the

---

[1]     The juvenile court adjudicated defendant a "juvenile offender" in a case which involved a conspiracy to possess cocaine. Defendant was 14 years old.

information increased the statutory maximum on Counts 2 and 3 from 20 to 30 years in prison and increased the statutory maximum on Counts 4 through 7 from 40 years to life in prison.

On October 27, 2005, without a plea agreement, defendant pled guilty to Counts 2 through 7.  On October 31, 2005, the Court commenced a jury trial on the remaining counts against defendant as well as Tyler and McGee.  On December 13, 2005, the jury returned a verdict which found defendant not guilty of the drug conspiracy (Count 1) but guilty of the charges related to the attempted killing of Atkins (Counts 8, 10 and 11).  See Verdict (Doc. #372).

Defendant's total offense level was 44, with a criminal history category VI, resulting in a guideline sentence of life.  On May 2, 2006, the Court sentenced defendant to 360 months in prison on Counts 2 and 3; life in prison on each of Counts 4 through 7; and 240 months in prison on Counts 8 and 10, with all of those sentences to run concurrent with each other.  As to Count 11, the Court sentenced defendant to 120 months to be served consecutively to the sentence on all other counts.  Defendant appealed his convictions and challenged a number of the enhancements which the Court applied during the contested sentencing hearing. On July 14, 2008, the Tenth Circuit affirmed defendant's convictions and sentence.  United States v. Ivory, 532 F.3d 1095 (10th Cir. 2008).

On February 26, 2010, the Court overruled defendant's motion to vacate his sentence under 28 U.S.C. § 2255.  See Memorandum And Order (Doc. #525).  On August 2, 2010, the Tenth Circuit dismissed defendant's appeal as untimely.  See Order (Doc. #538).

On December 6, 2019, the Tenth Circuit authorized defendant to file a successive Section 2255 motion to challenge his Section 924(c) conviction (Count 11) based on United States v. Davis, 139 S. Ct. 2319 (2019).  Order (Doc. #583) filed December 6, 2019 at 2.  Specifically, the Tenth Circuit found that Davis had announced a new rule of constitutional law that the Supreme

Court made retroactive to cases on collateral review.  See id.

On March 27, 2020, defendant filed a pro se motion to vacate his sentence under 28 U.S.C.

§ 2255.  Defendant's motion alleged that (1) his conviction and sentence under 18 U.S.C. § 924(c)

should be vacated in light of Davis; (2) his guilty plea to Counts 2 through 7 was not voluntary or

knowing; and (3) counsel provided ineffective assistance at sentencing and on appeal.

On April 13, 2020, defendant filed a pro se motion to reduce his sentence under

Section 404(b) of the First Step Act.

On July 8, 2020, the Court overruled in part and dismissed in part defendant's Section 2255

motion but sustained his motion under the First Step Act.  Memorandum And Order (Doc. #592).

The Court held that because Counts 4 through 7 charged distribution of "more than five grams of

cocaine base," the First Step Act eliminated the statutory minimum for those offenses and lowered

the statutory maximum from life to 30 years.[2]  Id. at 14.  Accordingly, defendant was entitled to a

reduced sentence to 30 years or less on each of Counts 4 through 7.  Id. at 13–14.  Instead of filing

a brief solely on the issue of an appropriate revised sentence on Counts 4 through 7, defendant has

filed a motion for compassionate release.  Defendant asserts that the reduced statutory maximum

---

[2]      Effective August 3, 2010, Section 2 of the Fair Sentencing Act of 2010, Pub. L.
No. 111-220; 124 Stat. 2372, increased the amount of cocaine base needed to trigger certain
statutory minimum and maximum sentences.  In particular, the Fair Sentencing Act raised from 50
to 280 grams the amount of cocaine base needed to trigger the statutory range in
Section 841(b)(1)(A)(iii), i.e. 20 years to life with a prior qualifying conviction.  See 21 U.S.C.
§ 841(b)(1)(A)(iii).  The Fair Sentencing Act also raised from five to 28 grams the amount of crack
cocaine needed to trigger the statutory range in Section 841(b)(1)(B)(iii), i.e. ten years to life with
a prior qualifying conviction.  See 21 U.S.C. § 841(b)(1)(B)(iii).  Because defendant had a prior
conviction for a felony drug offense, the prior statutory range included a minimum of ten years in
prison and a maximum of life in prison.  See 21 U.S.C. § 841(b)(1)(B) (increasing statutory range
from five to 40 years to ten years to life for prior felony drug offense).  After the First Step Act
retroactively applied the revised statutory penalties of the Fair Sentencing Act, and in light of
defendant's qualifying conviction, his revised statutory range on Counts 4 through 7 has no
minimum but a maximum of 30 years.  See 21 U.S.C. § 841(b)(1)(C).

4

on Counts 2 through 7 and his rehabilitation constitute extraordinary and compelling reasons for a reduced sentence.  Defendant argues that in light of his rehabilitation and other Section 3553(a) factors, the Court should resentence him to a controlling term of 360 months in prison.  The government asks that the Court deny defendant's request for compassionate release but reduce his sentence to a controlling term of at least 480 months in prison under Section 404(b) of the First Step Act.

### Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.  See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).  Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c).  The Court may order compassionate release for "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).

The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after he submits a request to BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A).  The record reflects that on November 1, 2021, defendant submitted a request to the warden at USP-Florence, but the warden has not responded.  Because the warden did not respond within 30 days of defendant's request, defendant has satisfied the exhaustion prerequisite.

The Court may grant compassionate release if defendant establishes that (1) extraordinary and compelling reasons warrant a reduced sentence, (2) a reduced sentence is consistent with applicable Sentencing Commission policy statements and (3) the Section 3553(a) factors warrant a reduced sentence. 18 U.S.C. § 3582(c)(1)(A); United States v. Maumau, 993 F.3d 821, 831 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021). The Sentencing Commission has not issued an "applicable" policy statement for motions for compassionate release filed by defendants. Maumau, 993 F.3d at 837; McGee, 992 F.3d at 1050. Unless and until the Sentencing Commission issues such a policy statement, the second requirement does not apply. See United States v. Warren, No. 11-20040-01-WPJ, 2021 WL 1575226, at *2 (D. Kan. Apr. 22, 2021); see also United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) (where incarcerated person files motion, district court may skip step two of § 3582(c)(1)(A) inquiry and has full discretion to define "extraordinary and compelling" without consulting policy statement at U.S.S.G. § 1B1.13). Accordingly, the Court evaluates only the first and third requirements.

## I.  Extraordinary And Compelling Reasons For Release

The Court has discretion to independently determine whether defendant has shown "extraordinary and compelling reasons" that warrant release. See McGee, 992 F.3d at 1044, 1048. In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent." United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting extraordinary, Webster's Third International Dictionary, Unabridged (2020)). "Compelling" means "tending to convince . . . by forcefulness of evidence." Id. (quoting compelling, Webster's Third International Dictionary, Unabridged (2020)). The Court also considers how the Sentencing Commission has defined extraordinary and compelling reasons for BOP motions. See United States v. Carr, 851 F. App'x 848, 853 (10th Cir. 2021) (district court

has discretion to consider definition of extraordinary and compelling reasons in Section 1B1.13 application notes).  For BOP motions, the Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) a catchall category for an "extraordinary and compelling reason other than, or in combination with," the first three categories.    U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018).  In addition, the policy statement requires that before granting relief, the Court must find that defendant "is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)).

Defendant argues that extraordinary and compelling reasons exist because if sentenced today, he would face no statutory minimum on Counts 2 through 7 and the statutory maximum on each of those counts would be 20 years (instead of 30 years on Counts 2 and 3, and life on Counts 4 through 7).  Specifically, defendant contends that because his prior offense does not qualify as a "serious drug felony" under current law, the Court would not enhance his sentence under Section 851.  The First Step Act replaced the phrase "felony drug offense" with "serious drug felony" in subsections (A) and (B) of Sections 841(b)(1), but did not impact subsection (C). Section 841(b)(1)(C) still includes an enhancement for a prior "felony drug offense" as it did when defendant was convicted.  See 18 U.S.C. § 841(b)(1)(C).  Even so, as discussed below, the Court finds that even at the time defendant was convicted, his juvenile offender adjudication did not satisfy the definition of a "prior conviction for a felony drug offense."  18 U.S.C. § 841(b)(1)(C) (same language in pre-2018 version of subsections (A) and (B)).

As explained in the order on defendant's first Section 2255 motion, if his counsel had objected that his prior juvenile adjudication under the Kansas Juvenile Offender Code did not

constitute a "felony drug offense," the Court likely would have sustained the objection and not applied the enhanced statutory ranges under Section 841(b)(1).  See Memorandum And Order (Doc. #525) at 6–7 n.3.[3]  In 2010, the Court determined that even if counsel was deficient in failing to object to use of defendant's juvenile offender adjudication, he had not shown a reasonable probability that had his counsel objected, the Court would have imposed a different sentence.  See id. at 7–8.  In 2010, however, even if the Court had sustained counsel's objection to the Section 851 enhancement, defendant still faced a statutory minimum sentence of five years and a statutory maximum of 40 years on each of counts 4 through 7.  In addition, in 2010, based on the posture of the case, the Court had no opportunity to consider defendant's rehabilitation or any other changes in his personal circumstances.

Under current law, if the Court had sustained an objection to the Section 851 enhancement, defendant would face no statutory minimum and a maximum of 20 years on each of counts 4 through 7.  Likewise, on counts 2 and 3, his statutory maximum would be reduced from 30 years to 20 years.  In addition, in light of Amendment 782 to the Sentencing Guidelines, defendant's total offense level is reduced from 44 to 43.[4]  Because the Sentencing Guidelines do not include

---

[3]         A defendant is subject to enhanced statutory minimums and maximums if he violates Section 841(a) after a "prior conviction for a felony drug offense."  21 U.S.C. § 841(b)(1)(C) (same language in pre-2018 version of subsections (A) and (B)).  The Controlled Substances Act, 21 U.S.C. § 801 et seq., does not define a "conviction" or whether juvenile offenses may fall within the meaning of that term.  Because Congress did not explicitly include adjudications of juvenile delinquency in the definition of felony drug offense convictions under the Controlled Substances Act, the Court likely would decline to read such adjudications into the statutory definition.  See Memorandum And Order (Doc. #525) at 6–7 n.3 (citing United States v. Huggins, 467 F.3d 359, 361–62 (3d Cir. 2006) and United States v. Williams, 339 F. App'x. 654, 658–59 (7th Cir. 2009)).  To the extent the statutory term "conviction" is ambiguous, the Court would resolve that ambiguity in favor of defendant to exclude his juvenile adjudication as a prior "felony drug offense."  See id.

[4]         Defendant originally had a total offense level of 36 on the drug charges (Counts 2 through 7) and an offense level of 43 on the attempted killing of a witness charges (Counts 8 and

(continued . . .)

ranges for offense levels above 43, however, defendant's guideline range remains the same, i.e. life in prison.

To determine whether his collective circumstances establish extraordinary and compelling reasons for a reduced sentence, the Court also considers defendant's rehabilitation.[5] See United States v. Foreman, No. 02-CR-135-TCK, 2021 WL 2143819, at *7 (N.D. Okla. May 26, 2021) (personal rehabilitation, lack of criminal history and disparity between defendant's sentence and those sentenced for similar crimes after First Step Act constitute extraordinary and compelling reasons for relief); United States v. Marks, 455 F. Supp. 3d 17, 26 (W.D.N.Y. 2020) (combination of defendant's rehabilitation and changes to "stacking" provisions of 18 U.S.C. § 924(c) establish extraordinary and compelling reasons for sentence reduction), appeal withdrawn, No. 20-1404, 2021 WL 1688774 (2d Cir. Jan. 5, 2021). Defendant has a history of violent behavior beginning at the age of 12. In the instant case, at the age of 27, after defendant was arrested on significant drug trafficking charges, he attempted to have a witness killed. Defendant's attempt resulted in the witness being shot in the legs and suffering permanent injuries. Despite this extremely troubled

---

[4](. . . continued)
10). After the Court applied the multiple count adjustment, U.S.S.G. § 3D1.4, defendant's total offense level was 44. The Sentencing Guidelines do not include ranges for offense levels above 43. Based on a total offense level of 43 and a criminal history category VI, defendant's guideline range was life in prison.

After Amendments 750 and 782 to the Sentencing Guidelines and based on a total of 170.1 grams of crack cocaine attributed to defendant, his base offense level on the drug charges is reduced eight levels to 26. After applying the same adjustment on the drug charges that the Court applied at defendant's original sentencing (two-level enhancement for being organizer or leader of criminal activity), defendant's total offense level on the drug charges is reduced to 28. Defendant's offense level on the attempted killing of a witness charges remains at 43. After the Court applies the multiple count adjustment, U.S.S.G. § 3D1.4, defendant's total offense level is 43 or one level lower than at his original sentencing.

[5]        Rehabilitation alone cannot constitute an extraordinary and compelling reason for relief. See 28 U.S.C. § 994(t) (while Sentencing Commission shall issue policy statements on what constitutes reasons for sentence reduction, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

past, defendant has completed his GED while in prison, consistently participated in BOP programming and had no disciplinary incidents since November of 2014.  Given defendant's long history of violence and criminal conduct, his rehabilitation efforts to date are impressive.

The government notes that defendant has not taken responsibility for overseeing the effort to kill a witness.  Even so, the government does not dispute defendant's progress toward rehabilitation.  The government agrees that defendant has taken advantage of various educational courses and notes that he has made payments toward his restitution obligations and special assessments.  In these circumstances, the Court finds that defendant's rehabilitation, the fact that his prior juvenile offender adjudication does not qualify as a conviction for a drug felony offense, the changes in the statutory ranges on Counts 2 through 7 which have decreased the statutory maximum on each of those counts and eliminated the statutory minimum of life on Counts 4 through 7, and the one-level decrease in defendant's total offense level collectively constitute extraordinary and compelling reasons for a reduced sentence.

## II.    Section 3553(a) Factors

Next, the Court must determine whether a sentence reduction is warranted, and the extent of any reduction, under the applicable factors set forth in 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A).  The Court considers the nature and circumstances of the offense, defendant's personal history and characteristics, the purposes of sentencing including the need to protect the public from further crimes of the defendant, any threat to public safety and the need to avoid unwanted sentence disparities among defendants with similar records who are convicted of similar conduct.  See 18 U.S.C. § 3553(a).

The government argues that after balancing the Section 3553(a) factors and considering that defendant's guideline range even today is life in prison, the Court should resentence defendant

to a controlling term of at least 480 months.  Defendant seeks a controlling term of 360 months.

For reasons stated below, the Court finds that a reduced sentence of 360 months along with a

special term of supervised release of 60 months on home confinement is sufficient, but not greater

than necessary, to reflect the seriousness of the offense, afford adequate deterrence, protect the

public and provide defendant needed treatment in the most effective manner.  See 18 U.S.C.

§ 3553(a)(2)(A)–(D).

       As explained above, defendant's criminal history and offense conduct are troubling.  The

government argues that defendant's criminal history and excessively violent nature suggest that

he will still pose a direct danger to society if released after serving 360 months in prison.  See

Government's Response To Defendant's Motion For Compassionate Release (Doc. #620) filed

December 23, 2021 at 13.  As explained above, defendant appears to have made significant

progress toward rehabilitation.  On balance, some 18 years after defendant was incarcerated on

this offense, the Court gives less weight to his criminal history than his undisputed and extended

rehabilitative efforts which suggest that he no longer poses a direct danger to society upon release.

In addition, a special term of supervised release of 60 months on home confinement will reduce

the possibility that defendant will pose a danger upon release.  Today, defendant has already served

approximately 214 months in prison (the equivalent of 252 months with good time credit).  When

combined with the remainder of the proposed term of 360 months in prison and a special term of

supervised release that includes 60 additional months of home confinement, a reduced sentence

under Section 3582(c)(1)(A) is consistent with the seriousness of the offense, the need for

deterrence and the need to protect the public.

       In light of the reduction of the statutory imprisonment range on defendant's drug charges,

his rehabilitation and the applicable factors under 18 U.S.C. § 3553(a), the Court finds that a

sentence of 360 months with a special term of supervised release including home confinement of 60 months is sufficient, but not greater than necessary, to reflect the seriousness of the offense, afford adequate deterrence, protect the public and provide defendant needed treatment in the most effective manner.   See 18 U.S.C. § 3553(a)(2)(A)–(D).   Accordingly, the Court reduces defendant's sentence of life to 360 months in prison with a special term of supervised release of 60 months to start upon release.   During the special term of supervised release, defendant shall remain at his place of residence except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the U.S. Probation Officer.   During the special term of supervised release, defendant shall also follow all location monitoring procedures specified by the probation officer, and must contribute toward the cost, to the extent he is financially able to do so, as directed by the court and/or the probation officer.[6]

**IT IS THEREFORE ORDERED** that defendant's Motion For Compassionate Release (Doc. #617) filed December 1, 2021 is **SUSTAINED in part**.  **The Court reduces defendant's sentence to 360 months in prison (240 months on each of Counts 2, 3, 4, 5, 6, 7, 8 and 10, all to run concurrent with each other; and 120 months on Count 11 to run consecutive to the sentences imposed on all other counts).  Upon release from the Bureau of Prisons, defendant shall immediately begin a special term of supervised release of 60 months.  All terms and conditions that apply to defendant's standard term of supervised release (as set forth in the**

---

[6]     Defendant does not request that the Court separately consider relief under Section 404(b) of the First Step Act.  Under Section 404(b), the Court must reduce defendant's sentence of life on each of Counts 4 through 7 to 30 years or less.  On defendant's compassionate release motion, the Court already has considered the revised statutory range on Counts 4 through 7 and reduced defendant's sentence to 20 years on each of those counts.  Accordingly, the Court finds that no further reduction of defendant's sentence on Counts 4 through 7 is warranted under Section 404(b) of the First Step Act.

**Judgment In A Criminal Case** (Doc. #450) filed May 11, 2006 at 4–5) shall apply to defendant's special term of supervised release.  In addition, during the special term of supervised release, defendant shall remain at his place of residence except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the U.S. Probation Officer.  During the special term of supervised release, defendant shall also follow all location monitoring procedures specified by the probation officer, and must contribute toward the cost, to the extent he is financially able to do so, as directed by the court and/or the probation officer.  After the special term of supervised release expires, defendant will begin his standard term of supervised release of eight years.  Except as modified above, all other terms and conditions of the **Judgment In A Criminal Case** (Doc. #450) filed May 11, 2006 shall remain in effect.

Dated this 1st day of February, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

13